# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BTC Aviation Service Limited., <br><br> Plaintiff, <br><br> v. <br><br> Flagship Express Airlines, Inc., <br><br> Defendant. | Case No.: _____ <br><br> Demand of Jury Trial |

## COMPLAINT

Plaintiff BTC Aviation Service Limited, a Macau Limited company, by its undersigned attorneys, as and for its Complaint for Breach of Contract, Unjust Enrichment and Other Relief Against Flagship Express Airlines, Inc., an Illinois corporation, alleges as follows:

## CAUSE OF ACTION

1. Plaintiff BTC Aviation Service Limited ("Plaintiff" or "BTC") and Defendant Flagship Express Airlines, Inc. ("Defendant" or "Flagship") reached an Aircraft Full Charter Agreement - Ref: Charter/20200903 FSX ("Charter Agreement"). Under the Charter Agreement, Flagship is required to secure carrier's traffic rights upon Flagship's receipt of the first half of the Security Deposit. On or about September 8, 2020, BTC deposited the first half of the Security Deposit in the amount of USD $802,500, however Flagship has never fulfilled its obligations under the Charter Agreement. In addition, with the knowledge that time is of essence in the Charter Agreement, Flagship has repeatedly ignored BTC's requests for updates from mid of September to October 14, 2020 ("the scheduled date for the first flight to take off"). On October 14, 2020, in accordance with the Charter Agreement, BTC requested the return of

1

the first half of security deposit in the amount of USD $802,500, which was rejected by Flagship. Accordingly, Plaintiff brings this action for breach of contract or, in the alternative, unjust enrichment against Flagship; for breach of implied covenant of good faith and fair dealing.

## PARTIES

2. Plaintiff BTC Aviation Service Limited is a Macau Limited company, with a principal place of business at Av.Do Aeroport, Airport Logistics Business Center, Level 1 Room03, Paipai, Macau.

3. Defendant Flagship Express Airlines, Inc. is an Illinois corporation, with a principal place of business at 2S030 Ascot Lane, Warrenville, IL 60555.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 over this dispute because Plaintiff is a Macau company and the Defendant is an Illinois entity, and the amount in controversy is greater than the jurisdictional limit.

5. Venue is proper in the Northern District of Illinois because Defendant Flagship is an Illinois corporation with its principal place of business in the Northern District of Illinois.

## FACTS COMMON TO ALL COUNTS

6. Flagship provided the signed ACMI[1] Agreement between Flagship and FlyArmenia Airways LLC to induce BTC to reach the Charter Agreement dated September 03, 2020.

7. Under the Charter Agreement, Flagship agreed to provide cargo flight service of two operations: round-trip from Jinan Yaoqiang International Airport to O'Hare International

---

[1] "ACMI" is one of the methods to lease aircraft, crew, maintenance and insurance from airlines.

Airport (the "TNA-ORD-TNA" route) and operation from Jinan Yaoqiang International Airport to O'Hare International Airport and to Arturo Merino Benitez International Airport and back (the "TNA-ORD-SCL-TNA" route). The first TNA-ORD-TNA route flight was scheduled on October 11, 2020. The first TNA-ORD-SCL-TNA routes flight was scheduled on November 08, 2020.

8. Under the Charter Agreement, BTC agreed to pay the agreed Charter Price and Security Deposit. Under the Charter Agreement, the first half of the Security Deposit in the amount of USD $802,500 should be paid upon signing the Charter Agreement. The other half of the Security Deposit should be "*paid upon carriers' receipt of traffic rights*."

9. On or about September 8, 2020, BTC deposited the first half of the Security Deposit in the amount of USD $802,500. Defendant confirmed receipt of the funds.

10. From September 8, 2020 to September 30, 2020. BTC continuously communicated with Flagship about the details of the TNA-ORD-TNA operation, including the departure and arrival time of the flight, ground service agreement with the airport, safety check of the aircraft, the carrier's contract in China, Air Waybill ("AWB") number. The pre-operation information sought by BTC are essential flight information that BTC needed to provide to its customers to facilitate sales.

11. On September 30, 2020, Flagship confirmed that it had not worked out a final departure and arrival time, and it had not received AWB number from the Carrier.

12. By October 14, 2020, Flagship had not entered a ground service agreement with TNA airport. Furthermore, Flagship had not provided BTC with any traffic rights documents issued by aviation authorities from any of the countries involved in the operations.

13. From October 1, 2020 to October 14, 2020, Flagship provided no information regarding the traffic right, despite BTC's numerous attempts to reach out to Flagship. The first TNA-ORD-TNA flight that was initially scheduled on October 11, 2020, later postponed on October 14, 2020 did not take off.

14. On or about October 13, 2020, Representative of Flagship named "James" advised BTC to contact FlyArmenia Airways LLC for more information. On or about October 15, 2020, BTC was informed by FlyArmenia Airways LLC that Flagship has not paid for the ACMI Agreement.

15. On October 14, 2020 and October 19, 2020, BTC demanded an immediate refund of the first half of the Security Deposit in the amount of USD $802,500 due to Flagship's breach of contract. In its email reply, Flagship blamed BTC for not paying the other half of the Security Deposit, even though Flagship never provided BTC with the "carrier's receipt of traffic right" nor asked for the other half of the Security Deposit before BTC demand the refund. In the same email, Flagship claimed that it was "prepared to move forward and [had] secured aircraft, Traffic rights etc."

16. To minimize the damage that has already occurred, BTC, in good faith, tried to negotiate an addendum with modified terms and conditions to the Charter Agreement. Flagship, again, failed to provide the any traffic rights documents and a ground service agreement with the airport. As a result, the Parties could not reach an agreement on the terms and conditions in the addendum.

17. In order to mediate its damages, BTC, in good faith, tried to find alternative operator but failed due to the high demand in the upcoming holiday season.

**COUNT I**
**(Breach Of Contract Against Flagship)**

18.     The allegations of paragraphs 1 through 17 above are realleged herein as and for paragraph 18 of Count I.

19.     BTC has deposited the first half the Security Deposit in the amount of USD $802,500 on or about September 8, 2020.

20.     BTC still had not received traffic rights documents under the Charter Agreement from Flagship.

21.     By failing to provide any traffic rights documents, Flagship has breached the Charter Agreement.

22.     Flagship was aware that providing traffic rights documents is its obligation after its receipt of the first half of the Security Deposit under the Charter Agreement.

23.     Flagship was aware that BTC would rely on its effort to provide the carrier's receipt of traffic rights documents.

24.     Flagship was aware that BTC would reply on its performance on the Charter Agreement.

25.     BTC has been damaged by Flagship's breach in that they have deposited USD $802,500, and relied on Flagship's performance.

26.     In reliance of Flagship's performance, BTC has entered into agreement with other company. As a direct result of Flagship's breach, BTC incurred damages in the amount exceeding USD $8,250,000.

WHEREFORE, BTC, pray for the entry of judgment in its favor and against Flagship, in the amount of USD $9,052,500, plus pre-judgment interest hereon, the costs of suit, and such other and further relief as this Court deems equitable and just.

## COUNT II
### (In the Alternative To Count I – Unjust Enrichment Against Flagship)

27. The allegations of paragraph 1 to 18 above are realleged herein as and for paragraph 27 of Count II. Count II is expressly pleaded in the alternative to Count I.

28. BTC has deposited the first half the Security Deposit in the amount of USD $802,500 on or about September 8, 2020.

29. BTC still had not received traffic rights documents under the Charter Agreement from Flagship.

30. BTC reasonably expected that Flagship would provide the receipt of carrier's traffic rights.

31. Flagship was aware that providing traffic rights documents is its obligation after its receipt of the first half of the Security Deposit under the Charter Agreement.

32. By failing to provide any traffic rights documents, Flagship has breached the Charter Agreement.

33. Flagship received the benefit of the first half of Security Deposit in the amount of USD $802,500 from BTC.

34. BTC has been damaged in that it deposited the first half of Security Deposit in the amount of USD $802,500, and relied on Flagship to provide traffic rights documents, but Flagship has never provided such receipt.

35. To allow Flagship retains the first half of Security Deposit in the amount of USD $802,500 would be unfair and would serve to unjustly enrich Flagship at the expense of BTC.

WHEREFORE, BTC, pray for the entry of judgment in its favor and against Flagship, in the amount of USD $802,500, the costs of suit, and such other and further relief as this Court deems equitable and just.

# COUNT III
## (Breach of Covenant of Good Faith and Fair Dealing)

36. The allegations of paragraph 1 to 18 above are realleged herein as and for paragraph 36 of Count III.

37. By entering into the Charter Agreement dated September 3, 2020, Flagship was required to act in a way that helps to make the agreement a success.

38. BTC has deposited the first half of the Security Deposit in the amount of USD $802,500 on or about September 8, 2020.

39. BTC still had not received traffic rights documents under the Charter Agreement from Flagship.

40. Flagship was aware that providing traffic rights documents is its obligation under the Charter Agreement after the receipt of the first half of the Security Deposit.

41. By failing to provide any traffic rights documents, Flagship has breached the Charter Agreement.

42. By refusing to provide any update as to the scheduled flight, Flagship has breached the implied covenant of good faith and fair dealing.

43. Similarly, Flagship has breached the implied covenant of good faith and fair dealing by ignoring communication from BTC.

44. Flagship was aware that BTC would rely on its effort to provide the carrier's receipt of traffic rights documents.

45. Flagship was aware that BTC would reply on its performance on the Charter Agreement.

46. BTC has been damaged by Flagship's breach in that they have deposited USD $802,500, and relied on Flagship's performance.

47. In reliance of Flagship's performance, BTC has entered into agreement with other company. As a direct result of Flagship's breach, BTC incurred damages in the amount exceeding USD $8,250,000.

WHEREFORE, BTC, pray for the entry of judgment in its favor and against Flagship, in the amount of USD $9,052,500, plus pre-judgment interest hereon, the costs of suit, and such other and further relief as this Court deems equitable and just.

Respectfully Submitted:

Date: 11/16/2020 /s/ Tianyu Ju
Tianyu Ju

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this November 16, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and service was perfected on all counsel of record and interested parties through this system, which will deliver a true and correct copy of the foregoing documents via CM/ECF.

                                                                       Respectfully Submitted:

Date: 11/16/2020                                                   /s/ Tianyu Ju
                                                                              Tianyu Ju